## ALLBRITTON et al. v. MADING'S DRUG STORES, Inc., et al.

### No. 10974.

Court of Civil Appeals of Texas. Galveston.
March 21, 1940.

Lewis W. Cutrer, of Houston, for appellants.

Maurice Epstein, of Houston, for appellee Mading's Drug Stores, Inc.

Kemper, Hicks & Cramer, of Houston (John G. Cramer, of Houston, of counsel), for appellee W. E. White.

MONTEITH, Chief Justice.

This is an appeal in an action brought by appellants, E. L. Allbritton and L. E. Thomasson, against appellees, Mading's Drug Stores, Inc., and W. E. White, for loss of profits resulting from an alleged breach of a lease contract.

In this opinion appellants Allbritton and Thomasson will be designated as appellants. Appellee Mading's Drug Stores, Inc., will be designated as appellee Mading's and appellee W. E. White will be designated as appellee White.

Appellants alleged that they had entered into a written contract with appellee White, for the leasing of store space in a building then being erected in the City of Houston as a business community center, under the terms of which they were given the sole and exclusive right to conduct a restaurant, cafeteria or delicatessen business therein; that appellee Mading's, who had also leased store space in said building, caused them to sustain damages in the loss of profits in the sum of $350 per month by selling and serving food on said premises, which they were prohibited from doing under the terms of their lease contract.

By alternative plea they sought damages against appellee White for loss of profits for the alleged breach of said lease contract.

Appellee Mading's answered by general demurrer and general denial and alleged that it had entered into a lease contract with appellee White prior to the date of the lease to appellants, and that under its lease it had the right to prepare and sell foods on said premises. By cross-action it sought judgment over against appellee White in the event judgment was rendered against it.

Appellee White answered by general demurrer and general denial, and specially pled that he did not breach any of the terms or provisions of said lease contract with appellants. By cross-action he sought recovery over and against appellee Mading's, in the event judgment was rendered against him.

At the conclusion of appellants' evidence in a trial before a jury, appellees rested their cases and presented motions for an instructed verdict. Appellees' motions were granted and judgment was entered accordingly, denying the relief sought by appellants.

Appellants assign error in the action of the court in instructing a verdict in favor of appellees and in the failure of the court to allow the jury to pass on the issue of nominal damages in their favor growing out of the alleged breach of said lease contract.

In compliance with an order of the trial court requiring them to plead their loss of profits more specifically, appellants alleged that they had sustained damages in the sum of $3500, "in that prior to the time, as aforesaid, that defendant, Mading's Drug Stores, Inc., began the wrongful acts herein complained of and the time that defendant White refused to compel the defendant Mading's Drug Stores, Inc., to cease such wrongful acts, plaintiffs' average net monthly profits which they derived from the operation of their restaurant amounted to $700.00 per month, but since the time the defendants began the course of conduct complained of, plaintiffs' average monthly profits have been reduced to $350.-00 per month."

The record shows that on March 5, 1936, appellee Mading's entered into a written contract with appellee White to lease a store room in the west end of a business community center building to be erected, for the purpose of conducting a drug store and soda fountain business, and that it moved into said location the latter part of June, 1936, and immediately began selling food to its customers.

On April 6, 1936, appellants entered into a written contract with appellee White to lease store space in the east end of said building. By the terms of their lease contract they were given the sole and exclusive right to conduct a restaurant, cafeteria or delicatessen business on said premises. Said lease provided that no lease would be made to "any like or similar business to that conducted by lessee on said premises, or to any business substantially competitive to a restaurant." Appellants began the operation of their restaurant on July 19, 1936.

The record shows that the average monthly profits derived by appellants from the operation of their business for the last five and a fraction months of 1936 were $563.79; that for the twelve months of 1937 they were $620.88, and for the twelve months of 1938 they were $627.09.

Appellants' business was a new enterprise. There is no showing that they or anyone else had conducted a similar business in this locality prior to the time they began the operation of their restaurant, and there is no showing in the record of any loss of profits which could have been caused by the operation of the Mading establishment, and no basis in the record from which these facts could be determined.

■ While our courts have recognized that loss of profits is a recoverable element of damages in an action for breach of contract or damages to a business, nevertheless it is uniformly held that alleged profits which are merely conjectural or incapable of being ascertained with any reasonable degree of certainty do not afford a proper basis for the recovery of damages, 13 Tex. Jur., page 207, section 108; Drumm Seed & Floral Co. v. McFarlane Co., Tex.Civ.App., 30 S.W. 93; Hedrick v. Smith, Tex.Civ. App., 146 S.W. 305; Walter Box Co. v. Blackburn, Tex.Civ.App., 157 S.W. 220; Texas Power & Light Co. v. Roberts, Tex. Civ.App., 187 S.W. 225.

■ Further, our courts have drawn a distinction between cases involving the loss of profits of an established business and those involving the loss of profits in an enterprise not established at the time of the alleged breach of contract.

Where the business is shown to have been already established and making a profit at the time the contract was breached, such preexisting profits, together with other facts and circumstances, may indicate with reasonable certainty the amount of profits lost. In cases of this kind it is permissible to show the amount of business done by the plaintiff in a corresponding period of time not too remote and the business during the time for which recovery is sought, 13 Tex.Jur., page 215, section 114.

In suits in which recovery is sought for loss of profits in an enterprise not established at the time of the breach of contract, it is held that the profits which might have been verified from the plaintiff's business are not susceptible of being proved to the degree of certainty which the law demands, and that no recovery may be had, for the reason that there is no basis for estimating the profits which would have been earned, and further that it is not certain that any profits would have been made from the operation of the business; 13

Tex.Jur., page 216, section 115; Walter Box Co. v. Blackburn, Tex.Civ.App., 157 S.W. 220; First National Bank v. Donahoe, Tex.Civ.App., 293 S.W. 217.

The exact question involved in this case has recently been decided by the Supreme Court in the case of Southwest Battery Corporation v. Owen et al., 131 Tex. 423, 115 S.W.2d 1097, 1098, in which Justice Sharp in his opinion says:

"The various legal encyclopediaes and textbooks lay down certain rules applicable to an action for damages for loss of profits. In [17] Corpus Juris, p. 785, § 112–f, the rule is stated in the following language:

" 'The generally accepted rule is that, where it is shown that a loss of profits is the natural and probable consequences of the act or omission complained of, and the amount is shown with sufficient certainty, there may be a recovery therefor; but anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated. So evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness.' * * *

"In the early decisions a rigid rule affecting the right of recovery for lost profits was announced. Modern business methods have caused a relaxation of that hard rule. 13 Tex.Jur., p. 198, § 102; 17 C.J. p. 785, § 112–b; 8 R.C.L. p. 601.

"The rule denying a recovery where the facts show that such profits claimed are too uncertain or speculative, or where the enterprise is new or unestablished, is still enforced, on the ground that the profits which might have been made from such business are not susceptible of being established by proof to that degree of certainty which the law demands; 13 Tex. Jur. p. 207, § 108; p. 216, § 115; 17 C.J. pp. 790, 791, and causes cited in notes."

■ In the instant case the record shows that Mading's Drug Stores, Inc., was a going business and was serving food at the time plaintiffs opened their restaurant on July 19, 1936, and that the alleged breach of said contract complained of occurred before plaintiffs' business was established.

Obviously, there is nothing in the record upon which to base an estimate of the profits appellants would have made in the event appellee Mading's had not conducted its business in said location, nor is it certain that they would have made additional profits from their business in the event Mading's Drug Stores, Inc., had not operated in competition with them.

■ Appellants assign error in the failure of the trial court to allow the jury to pass on the issue of nominal damages in their favor, growing out of the alleged breach of said lease contract.

While it is the rule that for every breach of contract the law conclusively presumes that nominal damages were suffered, Cotherman v. Oriental Oil Co., Tex.Civ.App., 272 S.W. 616, in order for a litigant to recover even nominal damages and his costs, it is necessary that he ask for said damages in the manner provided by law. A party cannot waive or refuse to ask for a special issue or instructions on the question of nominal damages, and thereafter claim the benefit of the law entitling him to such instruction.

In the case of Mitchell v. Heard, Tex. Civ.App., 98 S.W.2d 832, 836, appellant contended that he was entitled, as a matter of law and under the facts of the case, to a directed verdict in some amount, and that the trial court should have so instructed the jury, leaving the amount of his damages alone to be determined by the jury. The jury had found, under proper instructions and definitions, that appellants had suffered no damages, as a matter of fact; and had returned their verdict accordingly. The court held that the trial court was without authority, under such findings of the jury, to enter judgment in favor of appellant for any sum, other than a nominal amount, and that if, as a matter of law, the court should find, under other and separate findings of the jury, that appellant was entitled to nominal damages and costs, then appellant could have and should have filed an appropriate motion, after the return of the jury's verdict, asking the court to enter judgment in his favor for a nominal amount, based on such other findings. The court further held that, "In a case where the record shows that a party is entitled only to nominal damages, and he makes no request for a judgment therefor in the trial court, such case will not be reversed merely to permit the jury to award nominal damages. Freeman v.

Schwenker [Tex.Civ.App., 73 S.W.2d 609], supra; Northcutt v. Hume (Tex.Civ.App.) 174 S.W. 974; Major v. Hefley-Coleman Co. (Tex.Civ.App.) 164 S.W. 445; Von Schoech v. Herald News Co. (Tex.Civ. App.) 237 S.W. 651." Morin et al. v. Houston Press Co., Tex.Civ.App., 103 S.W.2d 1087; De Garza et al. v. Magnolia Petroleum Co., Tex.Civ.App., 107 S.W.2d 1078, 1082.

■ In the instant case the court determined that there was no question to go to the jury with reference to actual or exemplary damages. However, appellants did not request a charge or instruction on nominal damages. They filed no motion in the trial court for a judgment non obstante veredicto for nominal damages, did not ask that the judgment of the trial court be reformed, or that the costs be re-taxed against appellees, or either of them, and they do not in this court seek to have the court render a judgment in their favor for nominal damages and costs of court. Having failed to request a judgment of the trial court for nominal damages and costs of court, and having failed to request such judgment in this court, appellants have waived any right they may have had for such a judgment and are not entitled upon appeal to have this case remanded and a new trial granted.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

Affirmed.