**Opinion filed August 29, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00178-CV
_____

## GARY M. PRATER, Appellant

## V.

## 5L PROPERTIES, Appellee

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause No. 025051**

## M E M O R A N D U M   O P I N I O N

Appellee 5L Properties, a corporation, is the operator of an oil and gas lease that is situated on property owned by Appellant, Gary M. Prater. In 2019, Prater complained to 5L that a saltwater leak in one of its tank batteries was causing damage to Prater's land and cattle. In two letters that were sent to 5L, Prater sought

compensation for his alleged damages, indicating that 5L's failure to address his demands would cause interest to accrue at eighteen percent.

Appearing pro se below, Prater subsequently filed suit against 5L, claiming that 5L had damaged his property and breached the lease and seeking declaratory relief. 5L counterclaimed for usury under the Texas Finance Code. *See* TEX. FIN. CODE ANN. § 305.001(a) (West 2016). The trial court refused to hear Prater's claim for the damage to his property but granted his request for declaratory relief. The trial court also awarded $2,000 to 5L for usury, together with its attorney's fees and costs.

Through counsel, Prater now appeals from the trial court's judgment. We affirm in part, reverse and render in part, and reverse and remand in part.

*Factual and Procedural Background*

Prater is the owner of a 540-acre property that is situated in Jones County. 5L operates an oil and gas lease on the property. Pursuant to the terms of the lease, 5L is obligated to "pay for all damages resulting from operations on [the] premises, including, but not limited to, the surface of the land . . . grass [and] . . . livestock." However, the lease does not indicate when the payment for any damages would become due, nor does it indicate an interest rate that would accrue in connection with such payment.

In August 2019, the parties settled a lawsuit relating to 5L's ongoing operation of the lease. Following the settlement, the trial court rendered an agreed judgment reflecting the terms of the parties' agreement. Approximately two months later, Prater sent a demand letter to 5L, indicating that two of his cows had been killed because of a saltwater leak from one of 5L's tank batteries. Prater's demand sought compensation of $4,500 for the loss of the cows and the damage to the resulting land, and added that "[n]on [p]ayment will result in 18% interest per month till paid."

2

Later, on June 7, 2020, Prater sent another demand letter to 5L indicating that a total of six cows had died and demanding a total of $7,200. The second demand letter likewise indicated that, effective on the date of the demand, "interest of 18% per month will accrue."

Several weeks later, Prater filed a pro se lawsuit against 5L, alleging that 5L had breached the oil and gas lease, resulting in damage to the surface estate and other property. However, in his prayer for relief, Prater sought only a declaration that 5L was "bound by the lease," together with his costs of court.

On October 7, 2020, Prater filed a document with the district clerk, which requested a "hearing" on the case. However, this request did not explicitly indicate that Prater was seeking a jury trial, nor did Prater claim that he filed any other document that expressly sought a jury trial. It also appears to be undisputed that, at the same time Prater submitted a document requesting a hearing, he tendered a jury fee. 5L answered and filed two counterclaims against Prater, including a counterclaim for usury.

The case was set for trial on June 12, 2023. On the morning of trial, counsel for 5L filed a motion to strike the jury or to alternatively withdraw the case from the jury docket. In that regard, a jury panel was present in the courthouse at the time the trial court called the case for trial. In its motion, 5L argued that Prater had failed to make a timely request for a jury pursuant to the requirements of Rule 216 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 216. During a hearing on the motion, 5L also unilaterally stipulated to Prater's proposed declaration that the parties were bound by the terms of the lease. 5L then argued that, because of this stipulation, there was "no fact issue" remaining, and therefore no need for a jury trial. Prater responded to this argument by pointing out that the issue of whether the lease had been breached was a fact issue that needed to be resolved in the trial.

3

The trial court determined that the only issue raised in Prater's pleadings was a request for a declaratory judgment. It then granted the motion and proceeded with a bench trial on the declaratory judgment claim, together with a motion for contempt that was pending against Prater at the time that arose from another suit pending between Prater and 5L (trial court cause no. 024561).[1] Thereafter, the trial court rendered a declaratory judgment, indicating that "all parties of this litigation are bound to the terms of the lease." Additionally, the trial court rendered judgment in favor of 5L for $2,000, together with attorney's fees and costs.

## Failure to Try Prater's Claim for Damages

In his second issue, Prater complains that the trial court erred when it "refused to allow [Prater] to delve into matters at trial [that] it . . . deemed to be irrelevant, such as whether or not [5L] breached the lease." We construe this statement as a complaint that the trial court erred in refusing to try and render judgment on Prater's claim for damage to the surface estate. See TEX. R. APP. P. 38.9. The resolution of this issue hinges on a determination of whether Prater pleaded a claim for damages for breach of the lease.

Prater's petition included a paragraph under the heading "Plaintiff's Injury and Damages," which alleged that 5L had breached the lease and damaged the surface estate and other property, including trees, fences, roads, growing crops, grass, terraces, livestock, and improvements.[2] Thereafter, in his prayer for relief, he

---

[1]Neither party has appealed the contempt proceeding.

[2]We note that Prater entitled his petition as "Plaintiff's Original Petition for Delcaratory [sic] Judgment." However, "a pleading's title does not determine its character." *Aaron v. Fisher*, 645 S.W.3d 299, 310 (Tex. App.—Eastland 2022, no pet.). Instead, we focus on the substance of the relief sought in a pleading to determine its character. *See id.*

4

requested a declaratory judgment and "costs," together with "such other relief to which [he] may be entitled."

Seizing on the pleading's failure to specifically request money damages in the prayer for relief, 5L argued at trial, and the trial court agreed, that the pleading had not stated a cause of action for breach of the lease.[3] The trial court then proceeded to a bench trial on 5L's counterclaim for usury, allowing 5L to present its case-in-chief, while repeatedly stating that any claim for damage to the surface estate and other property was not before it.

"Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007): *see Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 161 (Tex. App.—Eastland 2010, pet. denied) ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases its claim."). We note in this regard that 5L filed special exceptions in connection with Prater's pleadings.[4] *See* TEX. R. CIV. P. 91.

---

[3]5L's attorney argued to the trial court as follows:

[Prater] requests that, I guess, the Court declare that [5L] is bound by the lease. [5L] would stipulate in open court that both parties are bound by the terms of the lease. So there is no fact issue that they're seeking declaratory judgment on and without a fact issue he's not filed for a jury trial anyway. He hasn't complied with the rules. He's filed what appears to be a petition for declaratory relief, which has been admitted so we would request that the Court deny the request for a jury trial and proceed, I guess, with our counterclaims without a jury.

[4]5L did not obtain a hearing and rulings on the special exceptions. *See Davis v. Angleton Indep. Sch. Dist.*, 582 S.W.3d 474, 481 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Failure to obtain a timely hearing and a ruling on special exceptions waives the exceptions and does not preserve them for appeal." (citing *McAllister v. Samuels*, 857 S.W.2d 768, 773 (Tex. App.—Houston [14th Dist.] 1993, no writ))).

In one special exception, 5L objected to Prater's allegations that "No. 10 of Original Lease has been breached" and for "damages resulting from operations on said premises" because Prater did not allege "the damages suffered and amount of compensation sought." 5L repeated its special exceptions to Prater's pleading for damages in a supplemental answer.

Prater's general prayer for relief (asking for "other relief" to which he might be entitled) is not itself sufficient to give 5L notice of a claim for breach of contract. *See, e.g.*, *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.) (general prayer for relief will not support an award of attorneys' fees). However, it *is* sufficient if it is "consistent with the theory of the claim reflected in the petition." *See Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677 (Tex. 1979).

In this instance, Prater's petition stated that 5L had breached the lease, and that 5L was obligated to pay damages as a result of the breach. Such allegations are sufficient to provide 5L with fair notice that Prater intended to pursue a claim for breach of the lease and subsequent damage to his property. This fact is established by 5L's special exceptions to Prater's pleading for damages for breaching the lease.

A trial court is not authorized to render judgment against a defendant before the defendant has had an opportunity to present evidence. *Producer's Constr. Co. v. Muegge*, 669 S.W.2d 717, 719 (Tex. 1984) (citing TEX. R. CIV. P. 262, 265); *Interest of A.C.R.*, No. 11-22-00070-CV, 2022 WL 2976148, at *2 (Tex. App.—Eastland July 28, 2022, no pet.) (mem. op.). Likewise, our rules of civil procedure require the trial court to proceed with the trial of a plaintiff's claims once it has called the case. *See* TEX. R. CIV. P. 247 ("Every suit shall be tried when it is called."). When the trial court ignored Prater's clearly stated claim that his property had been damaged and refused to proceed to trial on the same claim, it acted in violation of

Prater's right to a trial of his claim for breach of the lease. *See A.C.R.*, 2022 WL 2976148, at *2; *see also* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings.").

We sustain Prater's second issue.

## *Usury*

In his third issue, Prater complains that the trial court erred in awarding $2,000 to 5L for usury. We construe this issue as a complaint regarding the legal and factual sufficiency of the evidence to support the trial court's liability finding on usury. *See* TEX. R. APP. P. 38.9.

A. *Standard of Review*

When parties challenge the legal sufficiency of the evidence supporting an adverse finding on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding."

7

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

If a party attacks the factual sufficiency of an adverse finding on an issue in which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.*

B. *5L's Claim*

The Finance Code provides that "[a] creditor who . . . charges . . . interest that is greater than the amount authorized by [statute] in connection with a transaction for personal, family, or household use is liable to the obligor" for damages, as described in the statute. FIN. § 305.001(a) (the consumer provision). For example, a creditor who violates the consumer provision is liable for $2,000 in fixed damages or "20 percent of the amount of the principal, whichever is less." *Id.* § 305.001(a)(2). Similarly, "[a] creditor who contracts for or receives interest that is greater than the amount authorized by this subtitle in connection with a commercial transaction is liable" for damages, as described in the statute. *Id.* § 305.001(a-1) (the commercial

8

provision). In either case, a creditor who is liable for damages under the usury statute is also liable for "reasonable attorney's fees set by the [trial] court." *Id.* § 305.005.

5L's pleadings did not explicitly indicate that 5L was seeking damages under the consumer provision. However, there is no indication in 5L's pleadings that Prater and 5L contracted for the interest rate at issue, nor is there an indication that 5L has paid interest to Prater, excessive or otherwise. Likewise, the trial court awarded exactly $2,000 in damages to 5L, which is the amount of fixed damages under the consumer provision. *See id.* § 305.001(a)(2).

Because there is no allegation that Prater "contract[ed] for" or "receiv[ed]" interest above the approved statutory rate, and because 5L obtained an award of $2,000 in damages, we conclude that 5L's pleadings are best construed as a claim for damages under the consumer provisions of the usury statute. *See id.* § 305.001(a). Likewise, in reviewing the factual and legal sufficiency of the evidence, we construe the judgment as an award for damages under the "consumer" provision. *See Boucher v. Warrior Crane Serv., LLC*, 698 S.W.3d 344, 350 (Tex. App.—Eastland 2024, pet. filed) (where trial court does not issue findings of fact and conclusions of law, the court of appeals will imply any findings that are supported by the evidence).

C. *Is Prater a "Creditor?"*

The consumer provision necessarily requires 5L to prove that Prater is a "creditor." *See* FIN. § 305.001(a). The statute defines a "creditor" as "a person who loans money or otherwise extends credit." *Id.* § 301.002(3). Similarly, an "obligor" is defined as a "person to whom money is loaned or credit is otherwise extended." *Id.* § 301.002(13). However, we have held that a person who does not have a debt or other obligation cannot be an "obligor." *Peoples State Bank of Clyde v. Andrews*, 881 S.W.2d 520, 522 (Tex. App.—Eastland 1994, no writ). Thus, where a person

9

who is not a party to a note is sent a demand letter on the debt, such a person is not an "obligor" under the statute, and "[t]he mere sending of a demand letter alone cannot make a party an 'obligor' on a note." *Id.*

Prater argues that he is not a "creditor" of 5L because he has neither loaned money nor "extended credit" to 5L. The demand in question is based on the terms of an oil and gas lease, which obligates the lessee or its successors (in this instance, 5L) to compensate the owner of the surface estate for damages to land or cattle that arise out of the lessee's operations. It is not based on a loan. As such, the only question is whether Prater has somehow "extend[ed] credit" to 5L.

The usury statute does not explicitly define the phrase "extends credit." However, Texas courts have generally applied it in situations where a provider of goods or services provides an open account to a consumer. *See Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 851 (Tex. App.—Texarkana 2010, no pet.). In such circumstances, the provider of goods or services extends credit by charging interest from the date of purchase to the date of payment. *Id.*

In this instance, Prater had not provided any goods or services to 5L, nor does he otherwise appear to have "extend[ed] credit" to 5L. *See* FIN. §§ 301.002(a)(3); 305.001(a). Rather, Prater was making a demand on 5L relating to damages that had not yet been fixed by way of a judgment or settlement.

In its pleadings, 5L denied all of the claims that were asserted against it, including Prater's claim that it owed damages under the terms of the lease. However, 5L also maintains that Prater qualifies as its "creditor," as that term is defined in the statute. In support of this claim, 5L points to the holding of the Sixth Court of Appeals in *Broady v. Johnson*. 763 S.W.2d 832 (Tex. App.—Texarkana 1988, no writ). In *Broady*, a party to a contract to "properly care for the cattle" sued the opposing party for failing to make payments under the agreement, and the owner of

10

the cattle counterclaimed for usury, arguing that he had been charged interest in excess of the statutory rate. *Id.* at 833. As a part of its judgment, the trial court imposed a penalty for usury and applied it to offset a portion of the award to the plaintiff. *Id.*

The contract at issue in *Broady* involved an agreement by which a cattle owner was obligated to pay for the pasturing and care of his cattle. *Id.* As such, the court therein properly assumed that the parties were in a creditor-obligor relationship. *See Roberts*, 306 S.W.3d at 851. Such an arrangement is readily distinguishable from the relationship between Prater and 5L, since Prater is under no obligation to provide goods or services to 5L. As such, the evidence does not support 5L's claim that Prater is its "creditor."

D. *"Personal, Family, or Household Use"*

Prater also argues that the usury statute does not apply because the transaction at issue was not "for personal, family, or household use," *see* FIN. § 305.001(a), and 5L makes no response to this argument on appeal.

The lease grants 5L, which is a corporation, the right to explore, drill, and produce oil and gas. There is no other sense in which the lease is "used," nor is there any party other than the corporation that "uses" the lease. Furthermore, such "use" is for a commercial purpose, rather than "personal, family, or household" purposes. *See id.* As such, the lease does not represent a transaction that is subject to the consumer provision of the usury statute.

E. *Conclusion*

We presume that the trial court found that Prater and 5L were in a creditor-obligor relationship and that the transaction at issue was for personal, family, or household use. *See Boucher*, 698 S.W.3d at 350; *see also* FIN. § 305.001(a). However, because there were no fixed damages at the time of the demand, and

because 5L is not a person, a family, or a household, the evidence before the trial court was legally insufficient to support such findings. Accordingly, the trial court's judgment in favor of 5L was improper. *See Andrews*, 881 S.W.2d at 522.

We sustain Prater's third issue. Likewise, because the trial court erred in its liability finding under the usury statute, we sustain Prater's fourth issue, which complains that the trial court erred by awarding attorney's fees to 5L. *See* FIN. § 305.005 (requiring liability for charging usurious interest by contract or law prior to award of attorney's fees).[5]

## *Jury Trial Issue*

In his first issue, Prater complains that the trial court erred when it struck his demand for a jury trial. 5L's counterclaim for usury was the only issue arising out of the cause on appeal that was tried. Because Prater has prevailed on an evidentiary challenge to the usury claim in his third issue on appeal, the question of whether Prater was entitled to a jury trial for purposes of the action now on appeal is moot, and we need not (and do not) address Prater's first issue. *See* TEX. R. APP. P. 47.1 (The court of appeals must issue an opinion that addresses every issue raised that is "necessary to final disposition of the appeal.").

## *This Court's Ruling*

We affirm the judgment of the trial court insofar as it awards declaratory relief to Prater regarding the enforceability of the lease. We reverse the judgment of the trial court with respect to 5L's counterclaim for usury and render judgment that 5L take nothing in connection with the same claim. Finally, we reverse and remand

---

[5]Because we have determined that the trial court's liability finding on 5L's usury claim was unsupported by the evidence, we need not, and do not, address Prater's argument that the liability finding should also be overturned based on 5L's failure to provide Prater with notice of its intent to file suit for usury, as required by Section 305.006(b) of the Finance Code. *See id.* § 305.006(b); TEX. R. APP. P. 47.1.

Prater's claim for breach of the lease to the trial court for further proceedings consistent with this opinion.

JOHN M. BAILEY
CHIEF JUSTICE

August 29, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.